IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**CARSON JEROME DANSBY,**
    **Plaintiff,**

v.                                                                            **CIVIL ACTION NO. 3:16-CV-39**
                                                                                 **(GROH)**

**JAMES SHAVER, and**
**SHANNON MARKEL,**
    **Defendants.**

**REPORT AND RECOMMENDATION**

### I.    Introduction

Plaintiff, a former West Virginia state inmate who is no longer incarcerated, filed this § 1983 civil rights action which alleges deliberate indifference to his medical needs related to a fractured hand which Plaintiff suffered on or around November 11, 2015. Plaintiff, acting *pro se*, seeks 1.5 million dollars ($1,500,000.00) from the defendants in this case for pain and suffering, emotional distress and punitive damages resulting from defendants' "malfeasance of office" and "disregard" for official duties of the jail administrator related to a failure to "provide proper adequate medical treatment" in a timely manner. ECF No. 1 at 7.

On the same day he filed his § 1983 complaint, Plaintiff also filed a motion to proceed *in forma pauperis*, consent to collection of fees from his trust account, and his prisoner trust fund account statement. ECF Nos. 2, 3, 4. On April 26, 2016, Plaintiff was granted leave to proceed without prepayment of fees. ECF No. 15.

This matter was referred to the undersigned pursuant to 28 U.S.C. § 1915A(b) for judicial review. For the reasons set forth below, the undersigned recommends that Plaintiff's complaint be dismissed without prejudice.

## II. Factual and Procedural History

Plaintiff was a West Virginia state inmate who served a one to three year indeterminate sentence imposed on January 8, 2016[1], in case number 15-F-81 in the Circuit Court for Roane County, West Virginia, following his conviction for attempt to possess with the intent to deliver a controlled substance, marijuana. Prior to his January 8, 2016 sentencing, Plaintiff was confined at the Central Regional Jail[2] in Flatwoods, West Virginia and shortly after his sentencing Plaintiff was transferred to the Potomac Highlands Regional Jail in Augusta, West Virginia. It was during his confinement at the Central Regional and Potomac Highlands Regional Jails that the events occurred which led to the filing of this § 1983 civil rights action.

Plaintiff names as Defendants, Shannon Markel ("Markel"), who was the jail administrator in charge of the Central Regional Jail from July 31, 2015 until his retirement on November 13, 2015, and James Shaver ("Shaver") who succeeded Markel

---

[1] Plaintiff's effective date of sentence was July 30, 2015, thus pursuant to West Virginia Code § 62-12-13a, he became eligible for parole after serving one year of incarceration. Pursuant to West Virginia Code § 28-5-27, Plaintiff earned sufficient good time to be released after serving one half of the maximum term of his indeterminate sentence, or after having served eighteen months of incarceration.

[2] Plaintiff was also later incarcerated at Martinsburg Correctional Center and at Huttonsville Correctional Center, however, he does not allege that any violation of his rights occurred at either of those West Virginia facilities. ECF Nos. 1, 17. Following his incarceration in West Virginia, Plaintiff was extradited to Ohio for a probation violation and incarcerated at the Ohio Correctional Reception Center in Orient, Ohio and Noble Correctional Institution in Caldwell, Ohio. Plaintiff does not allege that any violation of his rights occurred at either of those Ohio facilities. ECF Nos. 31, 37.

on November 13, 2015[3]. ECF No. 1 at 2. Plaintiff alleges that during the time he was incarcerated Markel and Shaver oversaw "all operations of the Central [Regional] Jail." Id.

Plaintiff alleges that on October 26, 2015, while he was incarcerated at Central Regional Jail, he "was told no fractures were found" in his hand. ECF No. 1 at 7. However, on November 11, 2015, two days before Markel's retirement, Plaintiff alleges that, "fractures were found in my right hand." Id. Plaintiff claims that he did not see an orthopedist until December 10, 2015, at which time the orthopedist informed Plaintiff that his fracture had healed improperly and that Plaintiff "should [have] been brought to see him sooner." Id. Plaintiff claims that the orthopedist advised that surgery was necessary to repair the improperly healed fracture, but that such a surgery "may cause more damage to my hand." Id.

Plaintiff claims that on January 5, 2016, he was examined by an orthopedist in Weston, West Virginia, to "get me ready for surgery," which was to occur two to three weeks later. ECF No. 1 at 8. However, according to Plaintiff, he was transferred to Potomac Highlands Regional Jail on January 15, 2016, one week after he was sentenced. Id. Plaintiff claims this transfer delayed his medical treatment. Id. According to Plaintiff's complaint, his surgery would have occurred between January 19 and January 26, 2016, two to three weeks after his January 5, 2016 appointment. Id.

Plaintiff claims that following his transfer to Potomac Highlands he had to "wait to

---

[3] In his complaint, Plaintiff appears to incorrectly provide the date of Shaver's position as Administrator. He provides "as of 11-13-2016 until present." ECF No. 1 at 2.

see another orthopedi[st] until February 14, 2016[4]." Id.  Plaintiff claims that he was then referred to and seen by a hand specialist on March 14, 2016.  Id.  Plaintiff alleges that the hand specialist told him, "that nothing could be done.  It's been to[o] long since the fracture," and that his hand "would give out one day."  ECF No. 1 at 8 – 9.

According to his complaint, Plaintiff filed three separate grievance procedures: (1) Level 1 with an unnamed Health Services Administrator at an unnamed facility; (2) Level 2 with an unnamed Jail Administrator at an unnamed facility; and (3) Level 3 with the "Ch[ie]f Inspector/Gove[r]nor['s] Office."  ECF No. 1 at 5.  Although Plaintiff asserts that the grievances are "on file" at the Central Regional Jail and with the West Virginia Regional Jail Authority in Charleston, West Virginia, he did not comply with the instructions of Section III.E. of the court-approved form which required him to attach copies of those grievances and responses.  Further, Plaintiff provides no grievance procedure numbers by which to identify the matters.  Id.

On April 11, 2016, Plaintiff filed this civil action, naming Markel and his successor, Shaver, as defendants.  ECF No. 1 at 1.  In his complaint, Plaintiff alleges five grounds for relief.  Id. at 7 - 8.  Plaintiff alleges in Claim 1 that Shaver committed malfeasance of office and disregarded his official duty by failing to provide Plaintiff adequate and timely medical treatment.  ECF No. 1 at 7.  Plaintiff alleges in Claim 2 that Shaver committed dereliction of duty, and failed to administer the correct medical treatment in a timely fashion.  ECF No. 1 at 8.  Plaintiff alleges in Claim 3 that Markel committed dereliction of duty by failing to timely administer needed medical treatment.

---

[4] February 14, 2016, was a Sunday.  Although a Sunday would be an unusual day to have an office appointment, there are no medical records available to confirm when this appointment occurred.

Id. Plaintiff alleges in Claim 4 that Central Regional Jail Health Administrator, Christina Hamrick ("Hamrick"), committed dereliction of duty when she failed to timely administer adequate medical treatment. Id. Plaintiff alleges in Claim 5 that Hamrick committed malfeasance of office and disregarded her official duty as Health Service Administrator when she failed to provide him with adequate medical treatment and when she failed to "stop the transfer [to Potomac Highlands Regional Jail], which interrupted [Plaintiff's] medical treatment." Id. Although Plaintiff asserts two of his five claims against Hamrick, she was not named as a defendant to this action.

### III.  Standard of Review

Because plaintiff is a prisoner seeking redress from a governmental entity or employee of a governmental entity, the Court must review the complaint to determine whether it is frivolous or malicious. Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.

Courts must read *pro se* allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, a complaint is frivolous if it is without arguable merit either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989) (superseded by statute). The Supreme Court in Neitzke recognized that:

> Section 1915(d) is designed largely to discourage the filing of, and waste of judicial and private resources upon,

> baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11. To this end, the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless. Examples of the former class are claims against which it is clear that the defendants are immune from suit. . .

Id. at 327.

While *pro se* pleadings are held to a less stringent standard than those drafted by attorneys, even under this less stringent standard, a *pro se* complaint is still subject to dismissal. Haines, supra, at 520–21. "[T]he mandated liberal construction afforded to pro se pleadings 'means that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so.'" Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir.1999). However, "judges are [ ] not required to construct a party's legal arguments for him." Small v. Endicott, 998 F.2d 411, 417 - 8 (7th Cir.1993).

### A. Defendants' Direct Liability under Eighth Amendment Claims

To state a claim under the Eighth Amendment for ineffective medical assistance, the plaintiff must show that the defendants acted with deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). The Supreme Court in Estelle explained that such deliberate indifference ranges from, "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or

intentionally interfering with the treatment once prescribed." Id. To succeed on an Eighth Amendment cruel and unusual punishment claim, a prisoner must prove: (1) that objectively the deprivation of a basic human need was "sufficiently grave," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991). The Fourth Circuit restated the rule as, "The first prong is objective and requires that the deprivation be 'sufficiently serious'; the second requires us to determine whether subjectively 'the officials act[ed] with a sufficiently culpable state of mind.'" King v. Rubenstein, 825 F.3d 206, 218 (4th Cir. 2016) (internal citations omitted).

As to the first prong, a serious medical condition is one that has been diagnosed by a physician as mandating treatment or that is so obvious that even a lay person would recognize the need for a doctor's attention. Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990), cert. denied, 500 U.S. 956 (1991). In King, supra, the Fourth Circuit wrote that as to the second prong:

> Only the "unnecessary and wanton infliction of pain" implicates the Eighth Amendment. The requisite state of mind is thus "one of deliberate indifference to inmate health or safety." While "deliberate indifference entails something more than mere negligence, the cases are also clear that it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."

825 F.3d at 219 (internal citations omitted). In Farmer v. Brennan, 511 U.S. 825, 837 (1994), the Supreme Court held that:

> We hold [ ] that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and

7

> disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial or nonexistent." Id. at 844.

"It is obduracy and wantonness, not inadvertence or error in good faith that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause. . ." Whitley v. Albers, 475 U.S. 312, 319 (1986) (citations omitted; internal quotation marks omitted). A constitutional violation is established when "government officials show deliberate indifference to those medical needs which have been diagnosed as mandating treatment, conditions which obviously require medical attention, conditions which significantly affect an individual's daily life activities, or conditions which cause pain, discomfort or a threat to good health." Morales Feliciano v. Calderon Serra, 300 F.Supp.2d 321, 341 (D.P.R. 2004) (citing Brock v. Wright, 315 F.3d 158, 162 (2nd Cir. 2003)).

### B. Defendants' Supervisory Liability Under Eighth Amendment Claims

"Because vicarious liability is inapplicable to [ ] § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). As stated by the Fourth Circuit, because there is no *respondeat superior* liability under § 1983, supervisory liability lies only "where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." Vinnedge v. Gibbs, 550 F. 2d

926, 928 (4th Cir. 1997) (citing Bennett v. Gravelle, 323 F.Supp. 203, 214 (D. Md. 1971) aff'd 451 F.2d 1011 (4th Cir. 1971); Harris v. City of Virginia Beach, 11 Fed. Appx. 212, 215 (4th Cir. 2001). Nonetheless, when a supervisor is not personally involved in the alleged wrongdoing, he may be liable under §1983 if a subordinate acts pursuant to an official policy or custom for which he is responsible. Fisher v. Washington Metropolitan Area Transit Authority, 690 F. 2d 1133 (4th Cir. 1982) (abrogated on other grounds by County of Riverside v. McLaughlin, 500 U.S. 44 (1991)).

"We have set forth three elements necessary to establish supervisory liability under § 1983: (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994), Cert. denied, 513 U.S. 813 (1994) (citations omitted).

"To satisfy the requirements of the first element, a plaintiff must show the following: (1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff." Shaw, 13 F.3d at 799, citing Slakan v. Porter, 737 F.2d 368, 373 (4th Cir. 1984). "A plaintiff may establish deliberate indifference by demonstrating a supervisor's "continued inaction in the face of documented widespread abuses," however, a plaintiff

claiming deliberate indifference "assumes a heavy burden of proof." Shaw, 13 F.3d at 799. "Causation is established when the plaintiff demonstrates an "affirmative causal link" between the supervisor's inaction and the harm suffered by the plaintiff." Id.

### IV. Analysis

A review of the complaint pursuant to 28 U.S.C. § 1915A(b), reveals that Plaintiff fails to present a claim upon which relief can be granted. The defendants named by Plaintiff are not directly liable for his Eighth Amendment claims. Plaintiff cannot prove both prongs of the Wilson v. Seiter or King v. Rubenstein tests to demonstrate that either defendant acted with deliberate indifference to his medical needs. Further, Plaintiff cannot prove the three elements necessary to establish supervisory liability under Shaw v. Stroud.

**A. Plaintiff fails to state a claim upon which relief can be granted regarding defendants' direct liability.**

Plaintiff claims that Markel and Shaver were "derelict" in their duties as administrator, by "disregarding" his medical condition. However, Plaintiff cannot demonstrate that he can prove that either Markel or Shaver were deliberately indifferent to his health and safety. Nor can Plaintiff demonstrate that he can prove both parts of the Wilson v. Seiter test for cruel and unusual punishment claims.

Without considering whether Plaintiff may be able to establish that his medical condition was sufficiently grave, it is clear that Plaintiff cannot subjectively prove that either Markel or Shaver acted with a sufficiently culpable state of mind with the intent to deny him medical treatment. According to Plaintiff's complaint, Markel retired on

10

November 13, 2015, two days after Plaintiff's injury was discovered. ECF No. 1 at 2. Plaintiff makes no claim that Markel was involved with, or even aware of, his medical condition from November 11 through November 13, 2015.

As for Shaver, Plaintiff makes no claim that this Defendant was involved with, or even aware of, his medical condition from November 13, 2015 through his treatment by at least three orthopedic surgeons. Plaintiff's complaint acknowledges that he was treated by an orthopedic specialist on December 10, 2015 [ECF No. 1 at 7] and January 5, 2016 [ECF No. 1 at 8], by a second orthopedic specialist on February 14, 2016 [Id.] and an orthopedic surgeon specializing in hands on March 14, 2016 [Id.]. Nowhere in his complaint does Plaintiff allege any actions were directly taken by Markel or Shaver regarding Plaintiff's medical condition or treatment. Nor does Plaintiff allege that Markel or Shaver were even aware of his medical condition. A liberal reading plaintiff's complaint does not reveal any claim upon which relief can be granted in regard to direct liability of Markel or Shaver for Plaintiff's Eighth Amendment claim.

### B. Plaintiff fails to state a claim upon which relief can be granted regarding defendants' supervisory liability.

Plaintiff makes no allegation that Markel or Shaver were personally involved in his medical treatment. Instead, it appears that Plaintiff names Markel and Shaver only in their official capacities as successive administrators of the Central Regional Jail. However, official capacity claims "generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citation and quotations omitted). Therefore, suits against state officials

in their official capacities should be treated as suits against the state. Id. at 166. In order for the governmental entity to be a proper party of interest, the entity's policy or custom must have played a part in the violation. Id. (citing Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694 (1978); Oklahoma City v. Tuttle, 471 U.S. 808, 817-18 (1985)).

In this case, the plaintiff fails to assert that a policy or custom of the entity played a part in the alleged violation of his constitutional rights. Accordingly, the plaintiff cannot maintain his claim against Markel or Shaver unless he can establish supervisory liability as to those defendants.

Here, Plaintiff fails to make any allegations which reveal the presence of the three required elements for supervisory liability. Without considering whether Plaintiff could establish the third prong of the Shaw test, it is clear that Plaintiff has not established either of the first two prongs. Plaintiff was required as to each Defendant to demonstrate (1) that defendant's supervisory knowledge of, (2) conduct engaged in by a subordinate, (3) where the conduct posed a pervasive and unreasonable risk of constitutional injury to Plaintiff. Plaintiff makes no claim that Markel or Shaver were aware of his health condition or any decisions made by or conduct engaged in by subordinates related to Plaintiff's health condition. Instead Plaintiff broadly claims that Markel and Shaver "disregarded" or were "derelict" in their duties as administrator of the Central Regional Jail. Even upon a liberal reading, the complaint fails to state a claim upon which he could prevail.

Moreover, non-medical supervisory personnel, like a warden or jail administrator,

may rely on the opinion of medical staff regarding the proper medical treatment of inmates.  See Miltier, *supra* at 855.  Accordingly, Markel and Shaver, as the administrators of the Central Regional Jail, did not and should not substitute their own medical judgment for that of medical professionals.  Because Plaintiff fails to allege any credible personal involvement on the part of Markel and Shaver, he does not make any allegations which reveal the presence of the required elements for supervisory liability and he fails to state a claim against Markel and Shaver.

### C. Plaintiff fails to state a claim upon which relief can be granted regarding the Health Administrator's liability.

Additionally, to the extent that Plaintiff may be seeking to establish a medical negligence claim against the Central Regional Jail Health Administrator[5] who was not named as a defendant, he must comply with West Virginia law and establish that:

> (a) the health care provider failed to exercise that degree of care, skill, and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and (b) such failure was a proximate cause of the injury or death.

---

[5] The Health Administrator is considered a health care provider pursuant to West Virginia Code § 55-7B-2(g) which provides that:

"Health care provider" means a person, partnership, corporation, professional limited liability company, health care facility, entity or institution licensed by, or certified in, this state or another state, to provide health care or professional health care services, including, but not limited to, a physician, osteopathic physician, physician assistant, advanced practice registered nurse, hospital, health care facility, dentist, registered or licensed practical nurse, optometrist, podiatrist, chiropractor, physical therapist, speech-language pathologist, audiologist, occupational therapist, psychologist, pharmacist, technician, certified nursing assistant, emergency medical service personnel, emergency medical services authority or agency, any person supervised by or acting under the direction of a licensed professional, any person taking actions or providing service or treatment pursuant to or in furtherance of a physician's plan of care, a health care facility's plan of care, medical diagnosis or treatment; or an officer, employee or agent of a health care provider acting in the course and scope of the officer's, employee's or agent's employment.

W.Va. Code § 55-7B-3. When a medical negligence claim involves an assessment of whether or not the plaintiff was properly diagnosed and treated and/or whether the health care provider was the proximate cause of the plaintiff's injuries, expert testimony is required. <u>Banfi v. American Hospital for Rehabilitation</u>, 529 S.E.2d 600, 605 (2000).

Under West Virginia law, certain requirements must be met before a health care provider may be sued.  W.Va. Code §55-7B-6[6].  Courts in this jurisdiction have previously held that compliance with W.Va. Code §55-7B-6 is mandatory prior to filing suit in federal court.  <u>Stanley v. United States</u>, 321 F. Supp. 2d 805, 807 (N.D. W.Va. 2004).  The statute provides in pertinent part:

> **§55-7B-6**. Prerequisites for filing an action against a health care provider; procedures; sanctions.
>
> (a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying with the provisions of this section.
>
> (b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the

---

[6] A revised version of West Virginia Code § 55-7B-6 was passed by the West Virginia Legislature on March 31, 2017, effective 90 days from passage, however, the undersigned refers to the prior version of the statute which was in effect at the time Plaintiff instituted this civil action.

14

> underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of rule 15 of the rules of civil procedure.

Pursuant to the statute, Plaintiff had a mandatory duty to comply with West Virginia Code § 55-7B-6 to produce the medical opinion of a qualified health care provider in order to raise any claim against Hamrick. Plaintiff did not comply with West Virginia Code § 55-7B-6, and accordingly, any claims which he attempts to assert against Hamrick herein should be dismissed, without regard to whether those claims have any merit.

## V.  RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that the Complaint [ECF No. 1] be **DISMISSED WITHOUT PREJUDICE**, based on the failure to state a claim upon which relief can be granted.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Gina M. Groh, Chief United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985); Wells v. Shriners Hosp., 109 F.3d 198 (4th

Cir 1997).

 The Clerk of the Court is directed to send a copy of this Order to the Plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet and to counsel of record via electronic means.

 DATED: July 11, 2017

*[signature: Robert W. Trumble]*
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE